UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANTISSA CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OLD SECOND BANCORP, INC. et al., ) <br> ) <br> Defendants. ) | No. 17 C 9175 <br><br> Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Mantissa Corporation ("Plaintiff") filed this action against Old Second Bancorp, Inc. and Old Second National Bank (collectively "Defendants") for alleged patent infringement. (R. 1, Compl.) Defendants presently move to stay this case pending resolution of *Ondot Systems, Inc. v. Mantissa Corp.*, No. 3:18-cv-00207 ("*Ondot* Litigation"), currently pending in the U.S. District Court for the Northern District of California. (R. 19, Mot. to Stay.) For the reasons stated below, the Court grants the motion and stays this case.

## BACKGROUND

Plaintiff is an enterprise software company founded in 1980 that develops identity protection software and technology. (R. 1, Compl. ¶ 10.) It is also the exclusive licensee of U.S. Patent No. 9,361,658 ("the '658 Patent"), which was issued by the U.S. Patent & Trademark Office on June 7, 2016, to Gary and Sharon Dennis. (*Id.* ¶¶ 12-13; R. 1-1, '658 Patent at [71].) The '658 Patent is titled "System and Method for Enhanced Protection and Control Over the Use of Identity" and, in general terms, claims methods for protecting and controlling the use of a financial account that are executed on computer hardware in combination with software. (R. 1, Compl. ¶¶ 11, 14.)

Defendant Old Second National Bank is a bank with 25 branches in Illinois and its main office in Aurora, Illinois. (*Id.* ¶¶ 4-5.) Defendant Old Second Bancorp, Inc. is the bank holding company for Old Second National Bank. (*Id.* ¶¶ 3-4.) On December 20, 2017, Plaintiff filed this suit alleging that Defendants' systems and services for debit and/or credit card control, monitoring, and management that incorporate the "SecurLOCK Equip" mobile application for Apple and Android smartphones, "or similar products, systems, and services," infringe the '658 Patent. (*Id.* ¶¶ 23-26.) The complaint asserts claims 1-16 of the '658 Patent, which are all method claims,[1] and alleges that Defendants are liable for direct, induced, and contributory infringement.[2] (*Id.* ¶¶ 25-26, 31-35.) In their answer, Defendants deny infringement and assert an affirmative defense of invalidity. (R. 16, Answer ¶¶ 23-38, 39.)

According to a declaration filed by Defendants in support of their motion to stay, Defendants indirectly licensed SecurLOCK Equip from a vendor, Ondot Systems, Inc. ("Ondot").[3] (R. 19-2, Lesher Decl. ¶ 3.) Ondot is a software development company based in

---

[1] A method claim is a claim covering "the performance of a series of acts or steps." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1362 (Fed. Cir. 2009) (citation omitted); *see also NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1322 (Fed. Cir. 2005) ("The invention recited in a method claim is the performance of the recited steps."), *abrogated on other grounds by Zontek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012). The other type of patent claim is an "apparatus" or "system" claim, which claims a "tangible item[]." *Cardiac Pacemakers, Inc.*, 576 F.3d at 1362 (citation omitted).

[2] The complaint also contains inexplicable allegations that, unfortunately, appear to have resulted from the document being reused as a template in multiple cases. Specifically, Plaintiff alleges that Defendants "had knowledge and notice of the '658 Patent and its infringement at least through the receipt of a letter sent to FFB on November 6, 2017." (R. 1, Compl. ¶ 27.) The reference to "FFB," not otherwise defined, is clearly a vestige of Plaintiff's complaint in *Mantissa Corp. v. First Financial Corp.*, No. 1:17-cv-9174 (N.D. Ill. filed Dec. 20, 2017), which named First Financial Bank, N.A. ("FFB") as a defendant and alleged in identical language that FFB "had knowledge and notice of the '658 Patent and its infringement at least through the receipt of a letter sent to FFB on November 6, 2017." (*Mantissa Corp. v. First Financial Corp.*, No. 1:17-cv-9174, R. 1, Compl. ¶ 27.) While the Court cannot fault litigants who strive to be efficient, parties should always carefully review filings with this Court.

[3] Defendants submitted declarations from Todd Lesher, who is Chief Revenue Officer of Ondot, (R. 19-2, Lesher Decl. ¶ 1), and Ryan R. Smith, a partner with the law firm Wilson Sonsini Goodrich & Rosati, who represents Defendants here as well as Ondot in the *Ondot* Litigation, (R. 19-1, Smith Decl. ¶¶ 1, 4).

2

Santa Clara, California. (*Id.* ¶ 2.) One of its primary products is "CardControl," which, in general terms, allows holders of a credit or debit card account to switch the status of the credit or debit card "on" or "off" using a mobile application for Apple and Android smartphones. (*Id.*) CardControl also lets cardholders impose other security restrictions on a given card, such as geographic or proximity controls. (*Id.*) Ondot licenses CardControl directly to banks, as well as to card-processing partners who, in turn, sometimes rebrand CardControl and resell the software to banks. (*Id.* ¶ 3.) For example, card-processor Fiserv rebranded CardControl as "CardValet" for its bank clients, and card-processor Vantiv rebranded CardControl as "CardGuard." (*Id.*) As relevant here, card-processor FIS rebranded CardControl as SecurLOCK Equip and licensed it to Defendants. (*Id.*)

Ondot has written agreements with its processing partners that require it to indemnify them for any allegations of patent infringement against CardControl, including paying the legal fees and costs for any lawsuit and any judgment for patent infringement. (*Id.* ¶ 4.) Ondot's processing partners, in turn, have similar indemnification and defense obligations to their bank clients. (*Id.*) Ondot has therefore indirectly agreed to indemnify banks, such as Defendants, who use CardControl. (*Id.*)

On January 9, 2018, Ondot filed suit against Plaintiff in the Northern District of California for declaratory judgment and for unfair business practices under California law. (R. 19-1, Smith Decl. ¶ 2; R. 19-1 at 6, *Ondot* Litigation Compl. ¶ 1.) Ondot seeks a declaratory judgment that its card control products do not infringe the '658 Patent. (R. 19-1 at 6, *Ondot* Litigation Compl. ¶ 39.) Ondot subsequently amended its complaint to also seek a declaratory judgment that the '658 Patent is invalid. (R. 25-1 at 23, *Ondot* Litigation First Am. Compl. ¶¶ 53-59.)

3

In the *Ondot* Litigation, Ondot alleges that Plaintiff had contacted Ondot, accused its card control products of infringing the '658 Patent, and sought to have Ondot take a license. (*Id.* ¶¶ 30, 32, 38.) Plaintiff also allegedly sent letters to customers of Ondot—specifically, banks who used Ondot's card control products—asserting that they infringed the '658 Patent. (*Id.* ¶¶ 36-37.) Then, in December 2017, Plaintiff filed four suits in this District against Ondot's bank customers—including this suit against Defendants—for infringement of the '658 Patent based on the banks' use of Ondot's card control technology. (*Id.* ¶¶ 39-40.) On multiple occasions during this period, Plaintiff stated that Ondot needed a license to the '658 Patent to continue selling CardControl and made clear to Ondot's counsel that Plaintiff would "not sue Ondot directly, but [would] instead sue the customers of Ondot's technology." (R. 19-1, Smith Decl. ¶ 6.) In two phone calls with Ondot's counsel in January 2018, Plaintiff's counsel asserted that Plaintiff would "use the lawsuits against Ondot's customers to 'pressure' Ondot into licensing . . . the '658 patent." (*Id.* ¶ 7.) Plaintiff also proposed a settlement to Ondot that would have "resolve[d] the lawsuits filed against Ondot's customers as well as others using Ondot's CardControl technology." (*Id.*)

The *Ondot* Litigation is still pending and in its early stages, with a case management conference scheduled for June 28, 2018. (*Id.* ¶ 8; *Ondot* Litigation, R. 37, Clerk's Notice.)

## LEGAL STANDARD

A district court's power to stay proceedings is well-established and "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (quoting *Landis*). The Court has "broad discretion" to decide whether a stay is warranted.

4

*Clinton v. Jones*, 520 U.S. 681, 706 (1997). When deciding whether to grant a stay, a court should "balance the competing interests of the parties and the interest of the judicial system" by considering the following three factors: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party. *In re Groupon Derivative Litig.*, 882 F. Supp. 2d at 1045 (citation omitted).

## ANALYSIS

Defendants seek a stay based on the "customer-suit" exception to the first-to-file rule.[4] (R. 19, Mot. to Stay at 5-7.) Under this exception, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). In practice, this means courts will "stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The purpose of staying the customer suit is "to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute," while the customer is simply a downstream retailer or end user of the allegedly infringing product. *In re Nintendo of Am., Inc.*, 756 F.3d at 1365 (citation omitted); *see also Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) ("At the root of the preference for a manufacturer's declaratory judgment action is the

---

[4] Under the first-to-file rule, "[w]hen two similar actions are filed, the general rule favors the forum of the first-filed suit." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 832 (N.D. Ill. 2004); *see also Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) ("When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action.").

5

recognition that, in reality, the manufacturer is the true defendant in the customer suit."). The "guiding principles" underlying the customer-suit exception are efficiency and judicial economy. *Spread Spectrum Screening LLC*, 657 F.3d at 1357 (citation omitted).

District courts, including courts in this District, have routinely applied this doctrine to stay patent infringement claims against customers in favor of resolving the patentee's claims against the upstream manufacturer first. *See, e.g., Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 6576861, at *1 (N.D. Ill. Dec. 13, 2013) (relying on customer-suit exception to grant stay of infringement claims against customers who were "end users" of allegedly infringing software, pending outcome of later-filed declaratory judgment action by developer of software); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, at *1 (N.D. Ill. Sept. 1, 2010) (granting motion to sever and stay claims against customers who "merely use" allegedly infringing product pending the outcome of patentee's suit against manufacturer of product), *appeal dismissed*, 657 F.3d 1349 (Fed. Cir. 2011); *Card Activation Techs. v. Pier 1 Imps., Inc.*, No. 09 C 2021, 2009 WL 2956926, at *1, 3-5 (N.D. Ill. Sept. 14, 2009) (relying on customer-suit exception to stay suit against retailer of allegedly infringing product in favor of later-filed declaratory judgment action by product's manufacturer).

The U.S. Court of Appeals for the Federal Circuit has also granted writs of mandamus directing district courts to stay proceedings on the basis of the customer-suit exception. *See In re Nintendo of Am., Inc.*, 756 F.3d at 1365 (relying on customer-suit exception, in infringement suit against manufacturer and retailers of allegedly infringing product, to grant writ of mandamus directing district court to sever and stay patentee's claims against retailers); *In re Google Inc.*, 588 F. App'x 988, 989-92 (Fed. Cir. 2014) (relying in part on customer-suit exception to grant writ of mandamus directing district court to stay infringement claims against smartphone

companies based on Android operating system, pending outcome of declaratory judgment action filed by Google, the developer of Android).

Defendants argue that this case should be stayed pursuant to the customer-suit exception because Ondot is the manufacturer of the allegedly infringing software and they "merely purchased Ondot's CardControl product." (R. 19, Mot. to Stay at 6.) Defendants assert that if CardControl is found to not infringe the '658 Patent in the *Ondot* Litigation, Plaintiff "would be precluded from pursuing its infringement claims" against them. (*Id.* at 7.) Conversely, if CardControl *is* found to infringe, Defendants represent that they "will not dispute infringement based on the operation of . . . CardControl technology." (*Id.*; *see also* R. 25, Reply at 1 (representing that "if the Court stays this case, Defendants will not contest liability . . . should Ondot be found to infringe a valid claim in a non-appealable final judgment").) Either way, Defendants contend, "the central issue of infringement will be resolved" in the *Ondot* Litigation, obviating large portions of discovery in this case. (R. 19, Mot. to Stay at 7.) Defendants argue that the efficiency of a stay in both time and cost will far outweigh any potential prejudice to Plaintiff. (*Id.*)

Defendants add that validity of the '658 Patent can be conclusively resolved in the *Ondot* Litigation as well—furthering the case for a stay—because Ondot amended its complaint to assert a claim of invalidity and Defendants represent that they will not contest validity here if Plaintiff prevails on that issue in the *Ondot* Litigation. (*See* R. 25, Reply at 5 ("Should the Court stay this case, and if the '658 patent is found to be valid in the [*Ondot*] Litigation, Defendants will not dispute validity.").)

Plaintiff advances several arguments in opposition to a stay. Plaintiff principally contends that the customer-suit exception should not apply because the *Ondot* Litigation "will not resolve

7

or even substantially clarify the infringement, invalidity, or damages issues" in this case. (R. 24, Opp'n. at 2.) Plaintiff offers several reasons in support. First, Plaintiff questions whether Ondot in fact supplied any software involved in Defendants' alleged infringement, as Defendants claim. (*Id.* at 3.) Plaintiff cites the listing for SecurLOCK Equip in the Google Play mobile application store, which identifies "FIS Payments" as the application's developer.[5] (*Ondot* Litigation, R. 21-2 at 86, Google Play Listing for SecurLOCK Equip.) According to Plaintiff, this shows that Ondot did not supply the allegedly infringing software, such that Ondot is not actually the "manufacturer" and the question of infringement in this case will not be resolved by the *Ondot* Litigation. (R. 24, Opp'n at 3, 10.) Second, Plaintiff appears to question whether Ondot's software is the only software involved in Defendants' alleged infringement, asserting that "[o]n information and belief, the [SecurLOCK Equip] 'app' is merely a window to the accused system and alone would not be covered by the '658 Patent." (*Id.* at 7.) Third, Plaintiff contends that the *Ondot* Litigation will not dispose of the question of infringement here because the asserted claims of the '658 Patent are all method claims.[6] (*Id.* at 5-6, 9-10.) Plaintiff points out that it has alleged that Defendants or their customers or "agents" perform each step of the claimed methods, and asserts that "none of [the steps] are believed to be performed by Ondot." (*Id.* at 6.) Therefore, Plaintiff argues, "Defendants are the most relevant entities" for resolving whether Defendants infringe. (*Id.* at 5.) Fourth, Plaintiff points out that damages and willfulness would

---

[5] Plaintiff did not attach a copy of the Google Play listing to its opposition brief, instead citing to a copy of the listing attached to its motion to dismiss in the *Ondot* Litigation. Parties should present evidence directly to this Court, not cite to documents filed with other courts and expect this Court to retrieve them. Nevertheless, in the interest of resolving Defendants' motion on the merits, the Court has obtained and will consider this document.

[6] While the complaint asserted claims 1-16 of the '658 Patent, in initial infringement contentions served on April 9, 2018, Plaintiff disclosed that it now asserts only claims 1, 3, 7, 8, 10-13, and 15. (R. 25-1 at 38, Pl.'s Disclosure of Asserted Claims and Preliminary Infringement Contentions at 1.)

8

have to be litigated here even if the issue of Defendants' alleged infringement is fully resolved by the *Ondot* Litigation. (*Id.* at 10, 12.)

Plaintiff also contends, without elaboration, that it has a "separate interest" in litigating the issue of infringement against Defendants, such that the customer-suit exception should not apply. (*Id.* at 1-2.)

Plaintiff further contends that the three customary factors relevant to a stay weigh against granting one here. (*Id.* at 11-13.) Plaintiff claims that a stay: (1) will not simplify any issues in this case; (2) will not reduce the burden of litigation on the parties or the Court; and (3) will put it at a tactical disadvantage. (*Id.* at 12.) As to the first two factors, Plaintiff largely repeats its arguments against applying the customer-suit exception. (*Id.*) As to the third factor, Plaintiff argues that a stay will "tactically disadvantage [it] because the [*Ondot* Litigation] does not involve the same parties and will inhibit [Plaintiff's] ability to both prove Defendants infringe and collect damages from Defendants." (*Id.*)

Last, Plaintiff offers a cursory argument that the *Ondot* Litigation was filed simply to delay and complicate Plaintiff's enforcement of its rights under the '658 Patent, and that Defendants' motion should accordingly be denied. (*Id.* at 2.)

Considering the posture of this case and the nature of Plaintiff's infringement allegations relative to what is at issue in the *Ondot* Litigation, the Court is persuaded that the customer-suit exception applies and that the relevant factors favor a stay. As an initial matter, the basic elements of the customer-suit exception—a patent infringement suit against a customer and a concurrent declaratory judgment action by the manufacturer, vis-à-vis the same patent and accused product—are both present. This suit by Plaintiff alleges that certain banking-related software, when operated or executed by Defendants and/or their customers, infringes the '658

Patent by performing each step of the asserted method claims. (R. 1, Compl. ¶ 25.) Defendants have represented, by way of a declaration from Ondot's Chief Revenue Officer, that the allegedly infringing software was supplied by Ondot, albeit through an intermediary. (*See* R. 19, Mot. to Stay at 1-2, 6; R. 19-2, Lesher Decl. ¶ 3.) Ondot, in turn, filed an action for declaratory judgment of non-infringement and invalidity of the '658 Patent, with respect to that same software, less than a month after Plaintiff filed this action. (R. 19-1, Smith Decl. ¶ 2; R. 19-1 at 6, *Ondot* Litigation Compl. ¶¶ 1, 38-39; R. 25-1 at 23, *Ondot* Litigation First Am. Compl. ¶¶ 51-59.)

To justify a stay under the customer-suit exception, the manufacturer suit "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum Screening LLC*, 657 F.3d at 1358 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). This inquiry is simplest—and the customer-suit exception most apt—where the customer is accused of directly infringing apparatus claims, because the manufacturer's liability will necessarily turn on whether the accused product satisfies every limitation of those claims, and a resolution of that issue in the manufacturer's suit will also resolve whether the customer infringes. *See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016) (explaining that customer-suit exception is "conventionally applied to manufacturers and retailers who are both alleged to be direct infringers of an apparatus patent"). Although the circumstances here differ somewhat from the paradigmatic case for the customer-suit exception, the Court is satisfied that the same principles apply. *See In re Nintendo of Am., Inc.*, 756 F.3d at 1365 (applying customer-suit exception notwithstanding that "the circumstances of this case differ

10

from those of the customer-suit exception," concluding that "we agree with the district court that the same general principles govern in that Nintendo is the true defendant").

Defendants' representations that they will not contest either infringement or validity of the '658 Patent if Plaintiff prevails on those issues in the *Ondot* Litigation, (R. 19, Mot. to Stay at 7; R. 25, Reply at 1, 5), are significant and weigh in favor of a stay under the customer-suit exception. *See Card Activation Techs.*, 2009 WL 2956926, at *3 (identifying, as a factor relevant to applying the customer-suit exception, "whether the customer-defendant agrees to be bound by any decision in favor of the patent owner"); *Mitutoyo Corp. v. Cent. Purchasing, Inc.*, No. 03 C 0990, 2003 WL 21031963, at *2 (N.D. Ill. May 8, 2003) ("Factors a court may consider in determining if a stay is appropriate include . . . whether the customers have agreed to be bound by the results of the [manufacturer] suit[.]"). In light of those representations, it is nearly certain that the *Ondot* Litigation will dispose of the invalidity question raised by Defendants' affirmative defense. If the '658 Patent is held not invalid in the *Ondot* Litigation,[7] Defendants will not contest that finding here. (R. 25, Reply at 5.) If it *is* held invalid, Defendants will be able to "reap the benefit of the invalidity decision under principles of collateral estoppel." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (citation omitted). Either way, there will be no need to address the merits of invalidity in this case, which favors a stay under the customer-suit exception. *See Card Activation Techs.*, 2009 WL 2956926, at *4 (noting with approval that "the parties would no longer litigate invalidity" in the customer case because the customer-defendant "agreed to be bound by the outcome of the [manufacturer] case").

---

[7] "Valid" may seem preferable to "not invalid." However, "[a] patent is never declared 'valid' but only 'not invalid' on the particular record" before a court. *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1472 (Fed. Cir. 1993).

11

Similarly, the *Ondot* Litigation is likely to resolve the question of Defendants' alleged infringement. If Ondot is found to infringe in the *Ondot* Litigation, Defendants represent that they "will not dispute infringement based on the operation of Ondot's CardControl technology." (R. 19, Mot. to Stay at 7; *see also* R. 25, Reply at 5 ("[S]hould the Court stay this case pending resolution of the [*Ondot*] Litigation and should Ondot be found to infringe, Defendants will not dispute infringement.").) Conversely, if Ondot is found to *not* infringe because its software does not actually perform each of the steps in the asserted claims when executed, Plaintiff will be precluded from maintaining its infringement claim against Defendants based on operating the software. *See SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1323 (Fed. Cir. 2015) ("The *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent." (citation and internal quotation marks omitted)). The Court recognizes that because Plaintiff asserts only method claims, Ondot could potentially be absolved of liability for reasons that have no bearing on Defendants' liability for direct infringement.[8] If that were to occur, however, Plaintiff could simply move to lift the stay here and proceed with its infringement claims against

---

[8] Because Defendants are accused of infringing method claims, Ondot ordinarily would only be liable for indirect—*i.e.*, induced or contributory—infringement. Indirect infringement requires proof of elements that direct infringement does not. To hold Ondot liable for inducing infringement under 35 U.S.C. § 271(b), Plaintiff will have to show that Ondot "knew or should have known [its] actions would induce actual infringements." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) (citation omitted). By contrast, there is no scienter requirement for direct infringement; it is a strict-liability offense. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). Similarly, to hold Ondot liable for contributory infringement, Plaintiff will have to prove that Ondot knew its software was "especially made or especially adapted for use in an infringement" of the '658 Patent, as well as that CardControl is "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Even if the scienter or staple-article elements of indirect infringement are not met as to Ondot, that would not necessarily relieve Defendants of liability for direct infringement. Put differently, Ondot could be absolved of liability for indirect infringement for reasons that would not bear on Defendants' liability for direct infringement. For that reason, Defendants' contention that Plaintiff "would be precluded from pursuing its infringement claims against [them]" if Ondot is found to not infringe, (R. 19, Mot. to Stay at 7), is not quite correct.

12

Defendants. Thus, in all but a narrow set of circumstances, the *Ondot* Litigation will dispose of the infringement issue in this case.

Contrary to Plaintiff's argument, the Google Play store listing for SecurLOCK Equip does not call into question Defendants' representation that Ondot supplied the allegedly infringing software. That it lists "FIS Payments" as the developer of SecurLOCK Equip is entirely consistent with Defendants' explanation that they indirectly licensed CardControl from Ondot through card-processor FIS, and that FIS rebranded and distributed the software under the name SecurLOCK Equip. (*See* R. 19, Mot. to Stay at 1-2; R. 19-2, Lesher Decl. ¶ 3.)

Although Plaintiff obliquely suggests that other software, in addition to Ondot's CardControl software, may be involved in Defendants' alleged infringement, (R. 24, Opp'n at 7), Plaintiff does not elaborate on this claim and offers nothing to substantiate it. In fact, as Defendants are correct to point out, Plaintiff's infringement contentions in *Mantissa Corp. v. Ondot Sys., Inc.*, No. 4:15-cv-01133 (S.D. Tex. filed April 29, 2015) ("Texas Litigation"), directly contradict this claim. (R. 25, Reply at 2-4.) In that case, Plaintiff had accused Ondot and one of its other customers, Lone Star National Bank, of infringing a closely related patent, U.S. Patent No. 8,353,027 ("the '027 Patent"). (*Texas Litigation*, R. 1, Compl. ¶¶ 11-16, 27-32.) The '658 Patent is a divisional of the '027 Patent, (R. 1-1, '658 Patent at [60]), which means the two have essentially identical specifications. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1337 (Fed. Cir. 2006) (noting that where "patents are continuations or divisionals of a common parent application" they "necessarily have almost identical specifications"). They are also similar in that the '027 Patent consists entirely of method clams that are "executed on electronic computer hardware in combination with software." (*Texas Litigation*, R. 1 at 42, '027 Patent.) In the Texas Litigation, like in this case, Plaintiff accused Ondot's and its customer's systems for "debit

and/or credit card control, monitoring, and management" of infringing the '027 Patent. (*Id.*, R. 1, Compl. ¶¶ 11-12.) In its infringement contentions, Plaintiff uniformly accused Ondot's software[9] of carrying out each step in the asserted method claims—steps of "storing," "receiving," "comparing," "determining," and "transmitting" that are very similar to those in the asserted claims of the '658 Patent.[10] (R. 25-1, Texas Litigation Infringement Contentions at 2-22 (disclosing Plaintiff's contentions for claim 11 of the '027 Patent).) It is telling that, in the context of accusing Ondot and one of its bank customers of infringing claims very similar to those asserted here, not once did Plaintiff suggest that non-Ondot software was relevant to infringement. For Plaintiff to claim otherwise here is simply not credible considering its infringement contentions in the Texas Litigation. *Cf. In re Google Inc.*, 588 F. App'x at 990 (directing district court to stay infringement proceedings against customers, noting that in denying a stay, the district court "relied heavily on each defendant mobile phone manufacturer's ability to modify and customize the Android platform to its own particular purpose," explaining that "[i]n fact, however, [the patentee] provided . . . infringement contentions to all defendants that rely almost exclusively on the underlying functionalities provided in the base Android source code provided by Google").

The Court is also unpersuaded by Plaintiff's argument that the customer-suit exception should not apply because Plaintiff is asserting only method claims. (R. 24, Opp'n at 5-6, 9-10.) It

---

[9] Plaintiff variously referred to Ondot's software as "Ondot's system," "OnDot's card control product," "[t]he OnDot architecture," and "[t]he OnDot system" in its infringement contentions in the Texas Litigation. (R. 25-1, Texas Litigation Infringement Contentions at 2-22.)

[10] As an example, Defendants offer a side-by-side comparison of claim 13 of the '658 Patent, which is asserted in this case, and claim 11 of the '027 Patent, which was asserted in the Texas Litigation. (R. 25, Reply at 2-4.) Both claims recite a "method of protecting use of an entity's [financial account / identity], the method being executed on electronic computer hardware in combination with software," and comprise steps of "storing" data, "receiving" a request, "comparing" two sets of identification information, "determining" whether certain conditions are met, and responding to the request by "providing" or "transmitting" information based on the "determining" step. (*Id.*)

is true that some courts have declined to apply the customer-suit exception where, as here, the customer is accused of directly infringing method claims and the manufacturer would only be liable for induced or contributory infringement. *Erfindergemeinschaft Uropep GbR*, 2016 WL 1659924, at *4 (collecting cases); *see also In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 537 (E.D. Pa. 2003) ("[W]here the patentee alleges that the customers themselves have directly infringed the method or process disclosed in the patent, the customer suit exception does not apply."). However, this is not a strict rule, as at least one court in this District has recognized. *See Card Activation Techs.*, 2009 WL 2956926, at *3 (rejecting as "without merit" the contention that the customer-suit exception categorically "does not apply to method patents"). Moreover, the reason courts have declined to apply the customer-suit exception to method claims is that direct infringement in those cases depended not just on the features or function of the manufacturer's product, but also on how the customer *used* the product—specifically, whether the customer used the product in a particular way that would infringe the claimed method. *See Erfindergemeinschaft Uropep GbR*, 2016 WL 1659924, at *3 (declining to apply customer-suit exception to method claims because "there is no suggestion that Cialis infringes the '124 patent 'off the shelf'" and direct infringement required proof that customer "'administers' Cialis to persons in need of prophylaxis or treatment for BPH"). Here, by contrast, Plaintiff's claim of direct infringement appears to be based solely on the off-the-shelf functionality of Ondot's software. (*See* R. 1, Compl. ¶ 25.) Whether Defendants directly infringe will therefore depend entirely on how Ondot's software operates "out of the box," rather than on any peculiarities of how Defendants use or have implemented the software. *See Ricoh Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (applying customer-suit exception in case alleging infringement of method claims, concluding that "[plaintiff's] infringement claims against the

15

defendants are fundamentally claims against the ordinary use" of a manufacturer's software). Accordingly, the *Ondot* Litigation is likely to resolve the question of Defendants' alleged infringement in spite of the fact that the asserted claims of the '658 Patent are all method claims. *See id.*; *In re Google Inc.*, 588 F. App'x at 990.

Turning to Plaintiff's purported separate interest in proceeding against Defendants, some courts have declined to apply the customer-suit exception where the patentee had "a special interest in proceeding against [the] customer himself, rather than solely as a shadow of the manufacturer." *Ultra Prods., Inc. v. Best Buy Co.*, No. 09-1095, 2009 WL 2843888, at *4 (D.N.J. Sept. 1, 2009) (quoting *Codex Corp.*, 553 F.2d at 738); *see also A.P.T., Inc. v. Quad Envtl. Techs. Corp.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988) ("[W]here the patentee has a separate interest in litigating against the customer, the 'real party in interest' rationale for giving priority to the manufacturer's lawsuit is inapplicable. In these situations courts do not apply the customer suit exception."). However, Plaintiff has not identified what countervailing special interests it may have, and the Court declines to formulate an argument on Plaintiff's behalf. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not [a] court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." (citation omitted)).

As to the traditional stay factors, there is little doubt that the outcome of the *Ondot* Litigation will simplify the issues in this case. As discussed above, as a result of Defendants' concessions, invalidity will not need to be addressed at all here and infringement is likely, though not certain, to be resolved by the *Ondot* Litigation. The trial will accordingly be simplified by avoiding competing expert testimony on invalidity and possibly infringement, which is often lengthy and complex. While Plaintiff is correct that some issues may remain to be

tried here, a trial need not be rendered entirely moot to justify a stay. *See Milwaukee Elec. Tool Corp. v. Hilti, Inc.*, 138 F. Supp. 3d 1032, 1038 (E.D. Wis. 2015) (noting that, on a motion to stay, "the question is merely whether the issues will be simplified, and *not* whether the entire case will be resolved"). The issues that may remain, moreover, such as damages and willfulness, will be simpler and more accessible to the jury because they are more factual in nature. *See Capital Sec. Sys., Inc. v. ABNB Fed. Credit Union*, No. 2:14cv166, 2014 WL 5334270, at *4 (E.D. Va. Oct. 20, 2014) (noting that damages and willfulness are "the type of issues that can be dealt with easier and more quickly after resolution of the manufacturer suit").

For similar reasons, a stay will certainly reduce the burden of litigation on the parties and the Court. This case is in its early stages, with the case having just been filed in December 2017 and Defendants' answer filed on February 26, 2018. (R. 1, Compl.; R. 16, Answer.) A decision in the *Ondot* Litigation will render at least some fact and expert discovery on infringement and invalidity unnecessary, which will also avoid some of the complex and time-consuming disputes that invariably arise in patent litigation, particularly those concerning production of source code and other sensitive materials.

As to the third factor, the Court is unpersuaded that Plaintiff will be unduly prejudiced or tactically disadvantaged if this case is stayed. Plaintiff observes that Defendants are not parties to the *Ondot* Litigation, but does not explain how this will ostensibly "inhibit [its] ability to . . . collect damages from [them]." (R. 24, Opp'n at 12.) A stay does not end this case; it merely postpones an ultimate determination, and if Defendants are liable for infringement, Plaintiff will be able to enforce a money judgment in the same manner as if this case were not stayed. Plaintiff does not contend that Defendants are likely to deplete their assets or otherwise attempt to become judgment-proof during the pendency of a stay, and the Court discerns no other reason

that Plaintiff's ability to collect damages from Defendants will be compromised. The Court also cannot discern how a stay will limit Plaintiff's ability to prove that Defendants infringe, as Plaintiff argues. (*See id.*) To the contrary, if Ondot is found to infringe in the *Ondot* Litigation, Plaintiff will find it *easier* to prove infringement here because Defendants have agreed to concede infringement in that situation. (R. 19, Mot. to Stay at 7; R. 25, Reply at 1.) Plaintiff does not contend that relevant evidence in Defendants' possession might be lost during a stay, which could be a factor weighing against a stay. *See BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 651 (E.D. Tex. 2009) (denying stay pending reexamination of patent-in-suit, noting that "[b]ecause the stay could last over six years, witnesses could become unavailable, their memories may fade, and evidence may be lost"). Plaintiff complains only that Ondot has "shown [an] unwillingness to resolve infringement issues through liberal motion practice" in the Texas Litigation,[11] (R. 24, Opp'n at 12), but the mere fact that Ondot might be a more zealous litigant than its customers is not unduly prejudicial, as far as this Court is concerned. If anything, this argument reinforces the recognition underlying the customer-suit exception that "in reality, the manufacturer is the true defendant in the customer suit." *Codex Corp.*, 553 F.2d at 737-38. In sum, the Court concludes that all three factors weigh in favor of a stay.

As a final matter, Plaintiff's brief argument that the *Ondot* Litigation is simply a tactic to complicate or delay the enforcement of Plaintiff's patent rights, (R. 24, Opp'n at 2), is likewise unavailing. It is common for manufacturers to file suits for declaratory judgment of non-infringement and/or invalidity when their products are the basis for infringement actions against

---

[11] Plaintiff does not identify what "liberal motion practice" it is referring to, but it is presumably referring to Ondot's motion for judgment on the pleadings in the Texas Litigation. (*Texas Litigation*, R. 80, Mot. For J. Pleadings.) In that motion, Ondot argued that the asserted claims of the two asserted patents were invalid under 35 U.S.C. § 101. (*Id.*; *see also* R. 24, Opp'n at 3.) The court, treating Ondot's motion as one for summary judgment, agreed and granted summary judgment in Ondot's favor. *Mantissa Corp. v. Ondot Sys., Inc.*, No. 4:15-CV-1133, 2017 WL 3437773, at *20 (S.D. Tex. Aug. 10, 2017).

their customers. The customer-suit exception recognizes the efficiency and fairness of resolving those issues in a single suit between the patentee and the manufacturer, rather than piecemeal in multiple separate suits that may just be designed to harass or intimidate the manufacturer's customers. *See In re Nintendo of Am., Inc.*, 756 F.3d at 1365 (explaining that customer-suit exception is designed to facilitate a "just, convenient, efficient, and less expensive determination" of infringement claims); *Ricoh Co.*, 279 F. Supp. 2d at 557 (noting that "a patentee's election to sue customers, rather than the manufacturer itself, is often based on a desire to intimidate smaller businesses"). The Court perceives nothing untoward or procedurally improper about Defendants' motion to stay, which reasonably invokes this well-recognized doctrine.

In summary, the Court finds that the customer-suit exception applies and that it would serve the interests of efficiency and judicial economy to stay this case pending resolution of the *Ondot* Litigation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay (R. 19) is GRANTED, and this case is STAYED in all respects pending further order of the Court. During the stay, this lawsuit will be administratively dismissed without prejudice, with full reinstatement rights once this stay is lifted. Any party may move to lift the stay upon disposition of the *Ondot* Litigation.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 20, 2018**