UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MANTISSA CORPORATION,**

    Plaintiff,

v.

**OLD SECOND BANCORP, INC.** and
**OLD SECOND NATIONAL BANK,**

    Defendants.

Case No. 1:17-cv-09175

Hon. Mary M. Rowland

JURY TRIAL DEMANDED

# PLAINTIFF MANTISSA CORPORATION'S CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND ................................................................................ 1

II.  LEGAL STANDARDS FOR CLAIM CONSTRUCTION ..................................................... 1

    A.  Claim Construction Methodology ................................................................................ 1

    B.  Level of a Person of Ordinary Skill in the Art ............................................................. 3

III. CONSTRUCTION OF TERMS IN DISPUTE ........................................................................ 4

    A.  "transaction partner" / "category representing a different type of transaction partner" .. 4

    B.  "the financial account is OFF" / "OFF state" ................................................................ 9

IV. OBJECTIONS ......................................................................................................................... 12

V.  CONCLUSION ....................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                             **Page(s)**

*Beacon Adhesives, Inc. v. United States*,
    134 Fed. Cl. 26 (2017) ..................................................................................................6

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
    713 F.3d 1090 (Fed. Cir. 2013) ....................................................................................2

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) .............................................................................11, 12

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) ....................................................................................2

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014) ....................................................................................6

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    327 F.3d 1364 (Fed. Cir. 2003) ..................................................................................11

*Nautilus Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) .................................................................................................6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1352 (Fed. Cir. 2008) ................................................................................2, 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................................2, 3, 6

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ......................................................................................7

## I. INTRODUCTION AND BACKGROUND

More than fifteen years ago, Plaintiff Mantissa Corporation developed technology that allows individuals to control use of their financial accounts for transactions over a computer network without exposing sensitive information on the network for potential misuse by others. The U.S. Patent and Trademark Office ("PTO") examined the technology and granted it patent protection in U.S. Patent No. 9,361,658 (the "Patent") titled "System and Method for Enhanced Protection and Control Over the Use of Identity." Mantissa has asserted claims 1, 3, 7, 8, 10-13, and 15 of the Patent ("Asserted Claims").

In their claim construction brief, Defendants Old Second Bancorp, Inc. and Old Second National Bank (collectively, "Defendants") seek construction of two sets of terms of the Asserted Claims: (i) "transaction partner" and (ii) "the financial account is OFF" / "OFF state". Defendants' Claim Construction Brief, DE 43, p. 1. For these terms, Mantissa proposes the following constructions:

(i) "**category representing a different type of transaction partner**" means "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and restaurants"; and

(ii) "**the financial account is OFF / OFF state**" means "a status in which a use of the financial account is to be denied".

## II. LEGAL STANDARDS FOR CLAIM CONSTRUCTION

### A. Claim Construction Methodology

Mantissa provides the following to clarify Defendants' methodology to the extent it implies that a construction based on the "ordinary and customary" meaning does not necessarily consider the patent specification and prosecution history.[1] *Thorner v. Sony Computer Entertainment*

---

[1] In their Brief, Defendants write "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention… there is a heavy presumption that a claim term carries its ordinary and customary meaning…[A]bsent contravening evidence from the specification or

1

*America, LLC*, succinctly summarizes the proper approach to construing claims:

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

*Thorner*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The ordinary and customary meaning is "the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1352, 1360 (Fed. Cir. 2008); *see Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) ("term's ordinary meaning must be considered in the context of all the intrinsic evidence, including the claims, specification, and prosecution history").

In interpreting patent claims, the most important aid is the intrinsic evidence, specifically the claims, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314-17. The claims must be read in context with the specification. *Id.* at 1315. Claim construction begins with "the language of the claims themselves…." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Examination of a claimed term must include a review of (1) "the context in which [a] term is used in the asserted claim," and (2) consideration of other claims in the patent which can provide "enlightenment as to the meaning of a claim term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

"The specification 'is always highly relevant to the claim construction analysis'" and is usually "'the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v.*

---

prosecution history, plain and unambiguous claim language controls the construction analysis." DE 43, p. 2 (emphasis, citations, and internal quotation marks omitted).

*Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Under *Thorner*, "[t]he patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee *explicitly* redefines the term or disavows its full scope." *Thorner*, 669 F.3d at 1367 (emphasis added). By establishing a presumption in favor of "ordinary and customary meaning," the *Thorner* framework recognizes that the knowledge and experience of a person of ordinary skill in the relevant art provides an "objective baseline" for understanding the terms of a patent claim. *See Phillips*, 415 F.3d at 1313.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly under stood words." *Phillips*, 415 F.3d at 1314. However, construction may still be necessary if the ordinary meaning does not resolve a dispute about the scope of the claim. *See O2 Micro*, 521 F.3d at 1361-62.

### B. Level of a Person of Ordinary Skill in the Art

The meaning of claim terms must always be viewed through the eyes of a person of ordinary skill in the art. *See Phillips,* 415 F.3d at 1313. Mantissa submits that for purposes of construing the terms in the Patent, a person of ordinary skill in the art would be a person with knowledge of the communications, hardware, and software required to understand how to create a working system to permit individuals to control use of their financial accounts for transactions over a computer network without exposing sensitive information. This will typically require (i) a bachelor's degree in Electrical Engineering or Computer Science, or an equivalent degree, and at least three years of experience in the field of systems for processing and authorizing transactions in a financial account over a computer network or (ii) at least five years of experience in such field.

3

**III. CONSTRUCTION OF TERMS IN DISPUTE**

**A. "transaction partner" / "category representing a different type of transaction partner"**

| Defendants' proposal | Plaintiff's proposal |
|---|---|
| "transaction partner" is indefinite | Broader claim term "category representing a different type of **transaction partner**" means "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and restaurants" |

Defendants argue "transaction partner" is indefinite. This term always appears with and is clarified by the following broader claim language: "category representing a different type of transaction partner". Defendants do not argue that "category" or "type" in this language is indefinite or needs construction. Only by isolating "transaction partner" from its context within the claim language can Defendants make their argument. For the reasons below, Mantissa proposes that "category representing a different type of transaction partner" be construed instead of "transaction partner".

Mantissa believes "transaction partner", in the context of the claims and specification, is not indefinite and needs no construction. The claims define "type of transaction partner" in terms of "categories…authorized or unauthorized for transaction using the financial account" and the specification provides examples of these categories. Claim 1 recites "for a plurality of individual categories, whether each category is authorized or unauthorized for transaction using the financial account, each category representing a different type of transaction partner". Patent, 15:26-29. Claim 7 recites "setting a category status for each category of a plurality of categories as either authorized or unauthorized for transactions using the financial account, each category representing a type of transaction partner." *Id*. at 16:21-25. Examples of these categories in the specification are:

4

    (i)      "health services (e.g., doctors, hospitals, pharmacies)";[2]

    (ii)     "loans or new credit";[3]

    (iii)    "healthcare-related institutions";[4] and

    (iv)    "type of store" someone wants to avoid for "fraud", "[p]rivacy [or] self-control considerations", e.g., where someone "spends too much money".[5]

A person of ordinary skill in the art would understand a type of store someone wants to avoid would be, e.g., liquor stores, gas stations, or restaurants. Thus, based on the claim language and the specification, a person of ordinary skill in the art would understand "category" to mean "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and restaurants." The "type of transaction partner" for each category would then be the "type of seller of a class of goods or services such as hospitals, pharmacies, liquor stores, gas stations, and restaurants."

Mantissa proposes the broader term "category representing a different type of transaction partner" be construed because it (i) combines the related and intertwined concepts of "category" and "type of transaction partner" into one definition and (ii) would simplify understanding of the claims by a fact finder. Mantissa proposes this broader term is construed as "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and

---

[2] *See* Patent, 5:49-53 ("identity owner 30 could set up account profile 14 as follows:...(2) medical information is available at all times but only to users 20 that are pre-authorized for (i) health services (e.g., doctors, hospitals, pharmacies").

[3] *See* Patent, 5:49-55 ("identity owner 30 could set up account profile 14 as follows:...(3) applications for loans or new credit are never to be approved").

[4]
> The circumstances under which identity owner 30 elects to deny use of its identity are not limited to avoidance of fraud. Privacy and self-control considerations may also be a factor. For example, an identity owner 30 who wants to maintain confidentiality of his medical records, but wants to preserve quick access in emergencies can set identity attributes 13 in account profile 14 to only approve identity state requests 111 from authorized health-care-related institutions. In another example, an identity owner 30 who spends too much money at a certain store or type of store can set identity attributes 13 in account profile 14 to deny requests from that store or type of store.

Patent, 6:40-51.
[5] *Id.*

restaurants."

In their Brief, Defendants imply "transaction partner" is indefinite because it is not recited in the specification. *See, e.g.*, DE 43, p. 7 ("two quoted portions of the claims are the only instances of the term 'transaction partner' in the entirety of the '658 patent"; "the term does not appear anyway [sic] in the original patent specification"). However, patent law does not require the term to appear in the specification "to inform, with reasonable certainty, those skilled in the art about the scope of the invention". *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014); *See also Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1373 (Fed. Cir. 2014) ("patent which defines a claim phrase through examples may satisfy the definiteness requirement") (citing *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1336 (claim phrase "not interfering substantially" is sufficiently definite because one could use "the examples in the specification to determine whether interference with hybridization is substantial")).

Ignoring the claims and the specification, Defendants provide "extrinsic evidence" of a declaration of a technical expert who, fifteen years after the filing of the Patent, essentially deems "transaction partner" indefinite because it "could be referring to at least the following: (1) service provider; (2) users or vendors on a common computer network; (3) users involved in a transaction; or (4) wireless devices used to make the transaction." *Id*. at 8 (*citing* Rhyne Decl. ¶59). This extrinsic evidence should be disregarded for at least four reasons. First, it is outweighed by the intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("extrinsic evidence… is less significant than the intrinsic record in determining the legally operative meaning of claim language") (internal quotation marks omitted).

Second, Defendants' extrinsic evidence conflicts with the intrinsic evidence. *See Beacon Adhesives, Inc. v. United States*, 134 Fed. Cl. 26, 37 (2017) (disapproving of "extrinsic evidence

6

to arrive at a claim construction that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history"). Here, with respect to the expert's suggested option "(1) service provider", claims 1 and 7 clearly show that "transaction partner" is not the "service provider" because the "service provider [] control[s] use of an entity's financial account" based on a list of conditions, one of which is further based on "transaction partner".[6] The "service partner" does not control use of a financial account based on itself.

Third, the extrinsic evidence is unnecessary here where, as explained above, the intrinsic evidence resolves any ambiguity in the disputed claim term. *See Vitronics Corp.* 90 F.3d at 1584 ("[o]nly if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence…"). Here, "transaction partner" is sufficiently described in the Patent. In contrast, the expert's options (2), (3) and (4) for "transaction partner" are vague, overly-broad, or inconsistent with the claim language and the specification as discussed above.

Fourth, (and to the extent the Court permits extrinsic evidence,) in the context of the field of the Patent, i.e., systems for controlling use of financial accounts for transactions over a computer network, objective extrinsic evidence shows the claim phrase "category representing a different type of transaction partner" means "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and restaurants". To that end, Mantissa provides the testimony of Gary M. Dennis as a person of ordinary skill in the art. Mr. Dennis is a co-inventor on the Patent and, more importantly, has programmed and implemented systems at banks for

---

[6] For example, claim 1 recites in part: "A method for a service provider to control use of an entity's financial account…, comprising: setting scope of use…including at least:…(b) for a plurality of individual categories, whether each category is authorized or unauthorized for transactions using the financial account, each category representing a different type of transaction partner…determining, relative to the scope of use, whether the financial account may or may not be used…, comprising:…denying when the financial account is ON and the proposed transaction falls within a category that is unauthorized…"

controlling use of financial accounts over a computer network. Dennis Decl. ¶¶3-5; *see also* Dennis Decl. Ex. 1 (Dennis CV). Mr. Dennis provides three publications showing examples of the concept of "category" at the time of the inventions disclosed in the Patent. The first publication is an abstract of International Organization for Standardization ISO 18245:2003 dated April 1, 2003 regarding "Merchant category codes" for use in "Retail financial services". Dennis Decl. ¶21; Ex. 2. ISO 18245:2003 classifies "merchants into specific categories based on the type of business, trade or services supplied." Dennis Decl., Ex. 2. The full ISO 18245:2003 recites "Merchant category codes shall be allocated to enable the classification of merchants into specific categories based on the type of business, trade or services supplied." Dennis Decl. ¶21. ISO 18245:2003 includes a chart at its Annex A of numerous merchant categories including ones analogous to those identified in the Patent--e.g., "Hospitals", "Drug stores and pharmacies", "Package shops -- beer, wine, and liquor", "Service stations (with or without ancillary services)", "Automated fuel dispensers", "Eating places and restaurants"—and corresponding codes. *Id*.

The second publication is Internal Revenue Bulletin ("IRB") 2004-43 of the U.S. Internal Revenue Service, effective July 14, 2004. Dennis Decl. ¶22; Ex. 3. It provides "Merchant Category Codes ["MCCs"] to Determine Reportable Payment Card Transactions". *Id*. "A Merchant Category Code (MCC) is a classification code that is assigned by a payment card organization to a merchant/payee. The payment card organization assigns the merchant a particular code based on the predominant business activity of the merchant." IRB 2004-43, Sec. 4. The Bulletin includes a chart of numerous merchant categories—e.g., "Hospitals", "Drug Stores and Pharmacies", "Package Stores-Beer, Wine, and Liquor", "Service Stations", "Automated Fuel Dispensers", "Eating Places, Restaurants"--and their corresponding codes. Id., Sec. 5.03

> A payment card organization may assign MCCs, or equivalent Industry Codes, to merchant/payees that accept its payment cards and notify cardholder/payors that

> use its payment card of the MCC or equivalent Industry Code assigned to a merchant/payee. A cardholder/payor may then rely on the MCC or equivalent Industry Code assigned to a merchant/payee in determining whether a payment card transaction with that merchant/payee is subject to reporting under section 6041 or section 6041A.

*Id.*, Sec. 1.

The third publication is Visa's "Merchant Category Codes for IRS Form 1099-MISC Reporting" dated 2004.

> A Merchant Category Code (MCC) is a four-digit number used by the bankcard industry to classify suppliers into market segments. There are approximately 600 MCCs that denote various types of business (e.g., 5111 Office Supplies, 7299 Dog Grooming Services, 5722 Household Appliance Stores).

Dennis Decl. ¶23, Ex. 4 (FAQ 1). The publication includes a chart of merchant categories—e.g., "Hospitals", "Drug Stores and Pharmacies", "Package Stores--Beer, Wine, and Liquor", "Service Stations", "Automated Fuel Dispensers", "Eating Places, Restaurants"--and their corresponding codes. Dennis Decl. ¶23, Ex. 4 (pp. 9-13). These publications show one of ordinary skill in the art, in the context of the Patent, would have understood "category representing a different type of transaction partner" with reasonable certainty and means "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and restaurants". For the above reasons, Defendants' arguments and their extrinsic evidence should be disregarded.

### B. "the financial account is OFF" / "OFF state"

| Defendants' proposal | Plaintiff's proposal |
|---|---|
| "a state in which any use of the financial account is denied" | "a status in which a use of the financial account is to be denied" |

Defendants propose "the financial account is OFF" and "OFF state" mean "a <u>state</u> in which <u>any</u> use of the financial account <u>is</u> denied". DE 43, p. 9 (emphasis added). Mantissa proposes a similar construction that more closely tracks the language of the claims and specification: "a <u>status</u> in which <u>a</u> use of the financial account <u>is to be</u> denied".

9

To properly construe the claim terms, we start with the claims, which make clear that an entity or account owner sets a <u>status</u> of a financial account to OFF to <u>later</u> cause denial of <u>a</u>, not any, requested use or transaction. The independent claims recite in part with emphasis added:

> Claim 1: "setting scope of use…for the financial account, including at least: (a) the financial account to either OFF or ON…receiving…<u>an inquiry regarding a proposed transaction</u>…determining, relative to the scope of use, whether the financial account may or may not be used for <u>the proposed transaction</u>, comprising: denying when the **financial account is OFF**...";

> Claim 7: "setting scope of use…for the financial account, including at least: (a) <u>setting a state status of the financial account to either an OFF or ON state</u>…receiving…<u>an inquiry regarding a proposed transaction</u>…determining, relative to the scope of use, whether the financial account may or may not be used for <u>the proposed transaction</u>, comprising: setting the response status to impermissible when the state <u>status</u> for the **financial account is OFF**…and responding to <u>the inquiry</u>…";

> Claim 13: "receiving…<u>a request</u> to determine whether <u>a proposed use</u> of the entity's financial account…is allowable…determining whether the entity's financial account is in an entity established ON or **OFF state**…and responding to <u>the request</u>…".

Thus, with respect to "OFF", all claims focus on "<u>a</u>"/"the" use or transaction rather than "any" use or transaction. The claims do not state, as Defendants' construction erroneously requires, that any possible use of the financial account, such as use by a hosting bank based on a court order, would be denied when the financial account is OFF. Dennis Decl. ¶26. Rather, the claims only state that "a" use is denied. *Id*.

Further, the "OFF" status in all claims causes a later, proposed use or transaction <u>to be denied</u>. Clam 7 specifically refers to setting "a state <u>status</u>" and "the state <u>status</u> for the financial account is OFF" rather than "a state" of a financial account. In this claim, "state" is an adjective and "<u>status</u>" is the operative noun. Therefore, Mantissa's proposed construction "a status in which a use of the financial account is to be denied" follows the broader claim language more closely than Defendant's proposed construction does.

10

The specification also supports Mantissa's construction using "status". In one example, an individual "set[s] the default status….as on or off". Patent 8:58-61 (emphasis added). Here, "default status" is a specific kind of "status", which we discuss further below.

Defendants argue "OFF" means "lockdown state" because (i) the "claim language provides no mechanism for 'permitting' the 'proposed transaction' 'when the financial account is OFF'" and (ii) an example in the Patent recites, "essentially placing the use of a credit card, in a lockdown state." DE 43, p. 9 (emphasis and citations omitted). This argument fails for two reasons. First, the Asserted Claims do not have to provide a "mechanism for 'permitting' the 'proposed transaction' 'when the financial account is OFF'". The use of "comprising" in the Asserted Claims means they recite only a minimum of, and not all, steps of the claimed invention. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps.")

Second, the excerpt from the Patent used by the Defendants is only an "example" and does not define the claimed invention. *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) ("court will not countenance the importation of claim limitations from a few specific statements or figures [in the patent] into the claims.") Further, the "example" cited by the Defendants is setting "the default status", i.e., setting a specific kind of "status", rather than, more generally, "a status". *See* DE 43, p. 9 (citing Patent 8:58-63). Moreover, the "example" simply likens a "default status" to a "lockdown state"". *See* Patent, 8:58-63. The claims, however, do not recite "default status". Moreover, an example likening a "default status" to a "lockdown state" does not mean any "status" should be limited to a "lockdown state". Dennis Decl. ¶29.

Defendants argue another example in the Patent regarding credit reporting agencies supports their proposed construction that "any use…is denied". DE 43, pp. 9-10. However, the

11

subject matter of credit reporting agencies is not necessarily analogous to the subject matter of the financial accounts in the claims. Further, as stated above, an example does not import limitations into the claims. *See Computer Docking Station*, 519 F.3d at 1374. Still further, the example recites that "any use…<u>should be denied</u>", Patent, 12:39-40, which is different from Defendants' proposed construction of "any use…<u>is denied</u>". Indeed, "should be denied" more closely tracks Mantissa's proposed construction "is to be denied". Thus, Defendants' attempt to define the claim terms based on examples in the Patent while ignoring the actual claim language should be denied. Mantissa's construction, which closely tracks the language of the claims and specification, should be accepted.

## IV. OBJECTIONS

Mantissa objects to and does not address here Defendants' Supplemental Declaration of Dr. V. Thomas Rhyne (DE 49) filed Sept. 20, 2019. Defendants' claim construction brief was due August 26, 2019. Defendants already filed a declaration of Rhyne (DE 44) at that time. Defendants provided no valid reason for supplementing declaration DE 44 with supplemental declaration DE 49 almost a month after they filed their claim construction brief and shortly before Mantissa's responsive claim construction brief was due.

Mantissa objects to the declarations of Rhyne DE 44 and DE 49 as Dr. Rhyne is not a person of ordinary skill in the art at least because he does not have three years of experience in the field of systems for processing and authorizing transactions in a financial account over a computer network. See infra, II.B.

## V. CONCLUSION

For the foregoing reasons, (i) "**category representing a different type of transaction partner**" should be construed as "class of goods or services provided by a type of seller such as hospitals, pharmacies, liquor stores, gas stations, and restaurants" and (ii) **"the financial account**

12

**is OFF" / "OFF state"** should be construed as "a status in which a use of the financial account is to be denied".

Dated: September 26, 2019

Respectfully submitted,

 */s/ Nicholas A. Kurk*
Nicholas A. Kurk (ARDC 6292133)
Young Basile Hanlon & MacFarlane, P.C.
150 N. Wacker Dr., Suite 1450
Chicago, IL 60606
(312) 754-9332 / (248) 649-3338 Fax
kurk@youngbasile.com

-and-

John Demarco
Young Basile Hanlon & MacFarlane, P.C.
700 Milam St., Suite 1300
Houston, TX 77002
(832) 871-5058 / (248) 649-3338 Fax
demarco@youngbasile.com

-and-

Kenneth A Godlewski
(*Pro Hac Vice To Be Filed*)
Hunter Taubman Fischer LLC
1201 15th Street, NW, Suite 200
Washington, DC 20005
202-704-5860 / 202-659-2697 Fax
kgodlewski@htflawyers.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 26, 2019, the foregoing was caused to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

By: */s/ Nicholas A. Kurk*
Nicholas A. Kurk